UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

LILY, *et al.*,

      Plaintiffs,

    v.

DONALD VINCENT KELLER,

      Defendant.

Case No. 6:25-cv-00078-MTK

**OPINION AND ORDER**

**KASUBHAI,** United States District Judge:

Plaintiffs, on their own behalf and by their corresponding next friend and Guardian Ad Litem, bring a suit for liquidated damages arising out of crimes relating to the possession of child sex abuse material ("CSAM") by Defendant Donald Vincent Keller ("Defendant"). Before the Court are Plaintiffs' Request for Judicial Notice (ECF No. 48), Plaintiffs' Motion for Partial Summary Judgment (ECF No. 49), Defendant's Single Motion for Summary Judgment (ECF No. 57), and Plaintiffs' Motion to Strike (ECF No. 81). For the reasons below, Plaintiffs' Request for Judicial Notice is granted in part, Plaintiffs' Motion for Partial Summary Judgment is granted, Defendant's Single Motion for Summary Judgment is denied, and Plaintiffs' Motion to Strike is denied.

**BACKGROUND**

On November 22, 2024, Defendant pleaded guilty and was sentenced for violation of Or. Rev. Stat. § ("ORS") 163.686, which makes it a Class C felony to knowingly possess, control, or

Page 1 — OPINION AND ORDER

access sexually explicit conduct involving a child. Am. Compl. ¶¶ 43-45, ECF No. 6; Def.'s

Answer to Am. Compl. ("Answer") ¶ 6, ECF No. 9. Plaintiffs allege that they are victims of

child sex abuse, and that Defendant was convicted for possessing images of their abuse. Am.

Compl. ¶¶ 46-47. Plaintiffs bring a civil claim under 18 U.S.C. § 2255(a), which allows victims

of crimes related to the possession of CSAM to recover $150,000 in liquidated damages plus

costs and attorneys fees.

## I.      Defendant's Criminal Conviction

On June 29, 2023, law enforcement officials received a tip from the National Center for

Missing and Exploited Children ("NCMEC") that CSAM was downloaded or traded at the

residence of Defendant. Dale Decl. ¶¶ 1, 4-5, ECF No. 49-4. Law enforcement obtained a search

warrant for Defendant's property. Dale Decl. ¶ 5. When law enforcement arrived to search his

property, Defendant admitted that he had looked at CSAM, and he showed officers his computer

and storage devices which contained more than 6,200 unique CSAM images and videos. Dale

Decl. ¶¶ 6-7. The detective assigned to the case, Detective Dale, conducted a forensic analysis

and submitted data to NCMEC. Dale Decl. ¶ 9. NCMEC analyzed Defendant's CSAM and

identified each CSAM series, which are associated with a particular and known victim[1] as well

as a designated law enforcement point of contact ("POC"). Dale Decl. ¶ 9; *see, e.g.*, Montagne

Decl. ¶ 7, ECF No. 49-6.

Files from the following series were found in Defendant's computer: "Angela,

Aprilblonde, At School, Best Necklace, BluePillow1, CinderblockBlue, Jenny, Marineland1,

Misty, MotorCouch1, PinkHeartSisters1, Sweet White Sugar, Tara, Teal&PinkPrincess2, and

---

[1] Series names prior to 2018 did not distinguish between multiple individuals in a series name but altered its names to identify a single known victim. Hepburn Decl. ¶ 4 n.1, ECF No. 49-1.

Vicky." Dale Decl. ¶ 9. On October 30, 2024, Defendant pleaded guilty to five counts of Encouraging Child Sex Abuse in the Second Degree. Savage Decl. Supp. Pls.' Req. Judicial Notice & Mot. Partial Summ. J. ("Savage Decl.") Ex. 3 at 1-5, ECF No. 48-1.

## II.    Identification of Plaintiffs

On February 27, 2025, Detective Dale met with Carol Hepburn, who represents several of the children depicted in Defendant's collection. Dale Decl. ¶ 10. Detective Dale provided sanitized, true, and accurate copies of Defendant's CSAM files to Ms. Hepburn. Dale Decl. ¶ 11. Attorney Hepburn reviewed the copies, identified eight of the ten Plaintiffs bringing this motion as depicted in the images, and sent copies to the POC for each CSAM series. Hepburn Decl. Supp. Pls.' Mot. Partial Summ. J. ("Hepburn Decl.") ¶¶ 8.c. ("Violet"), 8.d. ("Maria"), 8.e. ("Henley"), 8.h. ("Sarah"), 8.j. ("Cara"), 8.l. ("Pia"), 8.m. ("Sloane"), 8.o. ("Lily"), ECF No. 49-1. Attorney Hepburn provided redacted copies of the Angela and AprilBlonde series to the attorneys for "Angela" and "April," including Tanya Hankins. Hepburn Decl. ¶¶ 8.a., 8.b. Attorney Hankins sent copies of the sanitized images of the Angela series to the POC for "Angela," and copies of the Aprilblonde series to the POC for "April." Hankins Decl. Supp. Pls.' Mot. Partial Summ. J. ("Hankins Decl.") ¶ 6-7, ECF No. 49-3.

The POC for each of the relevant Plaintiffs identified them as depicted in a particular series linked to them. Smith, Jr. Decl. ¶¶ 10-12, ECF No. 49-5 (identifying "Angela" of the Angela series); Montagne Decl. ¶¶ 7-9 (identifying "April" of the Aprilblonde series); Roberts Decl. ¶¶ 4-7, ECF No. 49-7 (identifying "Violet" of the At School series); Cornils Decl. ¶¶ 4-5, ECF No. 49-8 (identifying "Maria" of the Best Necklace series); Papineau Decl. 3, ECF No. 49-9 (identifying "Henley" of the BluePillow1 series); Behymer Decl. ¶¶ 4-6, ECF No. 49-10 (identifying "Sarah" of the Marineland1 series); Biggers Decl. ¶¶ 2-4, ECF No. 49-11 (identifying "Cara" of the MotorCouch1 series); Davis Decl. 3-4, ECF No. 49-12 (identifying

Page 3 — OPINION AND ORDER

"Pia" of the Sweet White Sugar series); Scroggins Decl. ¶¶ 5-7, ECF No. 49-13 (identifying "Sloane" of the TARA series); Findley Decl. ¶¶ 5-9, ECF No. 49-14 (identifying "Lily" of the Vicky series).

### III.    Procedural Background

Because of the sensitive nature of the underlying facts at issue, Plaintiffs filed their complaint under pseudonyms. Compl., ECF No. 1. On January 17, 2025, the Court, *sua sponte*, permitted Plaintiffs to proceed with the filing of the Complaint without publicly identifying themselves. ECF No. 2. Plaintiffs filed an Amended Complaint which added additional Plaintiffs under pseudonyms. ECF No. 6. Defendant Answered on February 18, 2025. Answer.

On February 24, 2025, Plaintiffs filed a Motion to Proceed with their Amended Complaint under pseudonyms. ECF No. 11. Defendant failed to respond by the deadline. Order 2, ECF No. 34. On March 17, 2025, the Court granted Plaintiffs' Motion to Proceed Under Pseudonyms. ECF No. 16. Later that day, without filing a motion for extension of time or seeking leave of the Court, Defendant filed an untimely response to the Motion to Proceed Under Pseudonyms, which the Court refused to consider. May 6, 2025, Order 2, ECF No. 34.

On March 11, 2025, Plaintiffs moved to strike several of Defendant's affirmative defenses. ECF No. 14. On April 8, 2025, Defendant filed an untimely response brief without leave of the Court. ECF No. 23. The Court granted Plaintiffs' motion in part, striking several of Defendant's affirmative defenses, including his defenses that the damages Plaintiffs seek and Plaintiffs' anonymity in the proceedings violate his due process rights. Op. & Order 4-7, ECF No. 35.

On July 23, 2025, the Court held a discovery hearing to address whether Plaintiffs needed to disclose their true names to Defendant. ECF No. 44. The Court held that Plaintiffs need not disclose their true names, considering their privacy interests and the ability to uniquely identify

them through other means such as the NCMEC series name. ECF No. 44; July 23, 2025, Disc. Hr'g Tr. 42:15-43:19; 45:16-23, ECF No. 46. The parties thereafter filed the motions now before the Court.

## STANDARDS

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

When parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the non-moving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the]

Page 5 — OPINION AND ORDER

same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *L.V. Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Thereafter, the non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

I.    **Plaintiffs Motion for Partial Summary Judgment**

Ten of fifteen Plaintiffs[2] move for summary judgment to establish Defendant's liability for his alleged violation of statutes prohibiting possession of CSAM and a judgment for statutory liquidated damages. Under § 2255, a plaintiff may recover $150,000 in liquidated damages from a defendant if (1) the defendant violated one of several specific statutes and (2) the plaintiff was a victim of that violation. 18 U.S.C. § 2255(a). The Court finds, as have other federal courts, that a plaintiff must make this showing by a preponderance of the evidence. *M.M. v. Manzano*, No. 18-cv-402, 2023 WL 4901650, at *5 (D. Conn. Aug. 1, 2023); *"Amy" v. Curtis*, No. 19-cv-02184, 2021 WL 1391463, at *8 (N.D. Cal. April 13, 2021).

---

[2] "Lily," "Sarah," "Sloane," "Cara," "Violet," "Maria," "Henley," "Pia," "Angela," and "April" bring this motion.

Plaintiffs argue that they are entitled to summary judgment because there is no genuine dispute of material fact that Defendant violated a specified statute and that the ten Plaintiffs are victims of Defendant's violation. Plaintiffs also request judicial notice of several documents to support their motion.

### A.    Plaintiffs' Request for Judicial Notice

Plaintiffs request that the Court take notice of seven documents in support of their motion. Pls.' Req. Judicial Notice Supp. Pls.' Mot. Partial Summ. J., ECF No. 48. These documents include four documents filed in the Defendant's underlying criminal case, the Defendant's Responses to Plaintiffs' Request for Admissions, one document provided by the U.S. Department of Justice, and one document provided by NCMEC. Savage Decl. ¶¶ 3-6.

A court may take judicial notice of matters of public record "not subject to reasonable dispute" when they are "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)). Such matters include information made publicly available by government entities and documents filed in state and federal courts where no party disputes its authenticity or accuracy. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010); *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

Defendant stipulates to Plaintiffs' request for judicial notice of Defendant's criminal case file. Def.'s Resp. Pls.' Mot. Partial Summ. J. 7, ECF No. 59. The Court takes judicial notice of the four documents from Defendant's criminal proceeding because they were obtained from Benton County Circuit Court and no party questions their authenticity or accuracy. Savage Decl. ¶ 3, Exs. 1-4. The Court need not take notice of Defendant's Responses to Plaintiffs' Requests for Admissions because Plaintiffs may properly rely on those responses in their motion. *See* Fed.

Page 7 — OPINION AND ORDER

R. Civ. P. 56(c)(1)(A). The Court takes notice of the U.S. Department of Justice publication because a government entity made it available and no party disputes its authenticity or accuracy. Savage Decl. ¶ 5, Ex. 6. The Court takes notice of the NCMEC publication because NCMEC is generally relied on in CSAM investigations and no party disputes its authenticity. *See* Savage Decl. Ex. 6 at 2-3, Ex. 7. Plaintiffs' Request for Judicial Notice (ECF No. 48) is granted in part.

**B.      Section 2255 Requires a Statutory Violation**

A plaintiff seeking to recover under § 2255 must show that the defendant violated one of several enumerated statutes. 18 U.S.C. § 2255(a). The enumerated statutes include § 2252, which punishes anyone who, among other things,

> knowingly possesses, or knowingly accesses with intent to view, . . . matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if—
>
>> (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
>>
>> (ii) such visual depiction is of such conduct[.]

18 U.S.C. § 2252(a)(4)(B). Plaintiffs argue that Defendant's conviction under Oregon law establishes the violation of the federal statute.

Defendant pleaded guilty to Encouraging Sexual Abuse in the Second Degree under ORS 163.686 because he

> did unlawfully and knowingly and for the purpose of arousing or satisfying the sexual desires of [him]self, possess or control or knowingly access with the intent to view, a visual recording of sexually explicit conduct involving a child while knowing or being aware of and consciously disregarding the fact that creation of the visual recording of sexually explicit conduct involved child abuse.

Savage Decl. Ex. 5 at 5; *see also* Or. Rev. Stat. § ("ORS") 163.686. Defendant's guilty plea confirms that he knowingly possessed or knowingly accessed, with the intent to view, a visual depiction of a minor engaging in sexually explicit conduct which was created involving the use

of a minor engaging in sexually explicit conduct. Defendant does not dispute that he has committed a violation enumerated in § 2255.

Plaintiffs must show that the CSAM was mailed, shipped, or transported with a means of interstate or foreign commerce or affecting interstate or foreign commerce; this element is distinct from the elements of the Oregon statute underlying Defendant's conviction. *Cf.* ORS 163.686. Plaintiffs, though only relying on the conviction in their motion, have submitted evidence weighing on this issue.

The Defendant downloaded CSAM onto his computer and other electronic storage devices using a browser or through trading CSAM images. Dale Decl. ¶¶ 4, 6-7. Law enforcement found the images in Defendant's possession in Oregon. Dale Decl. ¶¶ 4, 7. CSAM of the Plaintiffs is widely available in multiple states. *See* Hepburn Decl. ¶ 3; *see e.g.*, Smith, Jr. Decl. ¶¶ 1, 8 (CSAM of "Angela" was seized in North Carolina); Montagne Decl. ¶¶ 1, 4 (CSAM of "April" was seized in Iowa); Davis Decl. 3 (CSAM of "Pia" was recovered in Canada). Plaintiffs have presented evidence that the CSAM found in Defendant's possession was mailed, shipped, or transported in interstate commerce or by means of interstate commerce, including a computer. Defendant offers no relevant arguments or evidence in response to raise a genuine issue for the jury. Plaintiffs have shown Defendant violated 18 U.S.C. § 2252(a)(4)(B).

### C.    Section 2255 Requires Proof of Victimhood

Plaintiffs must also show that they are Defendant's victims. 18 U.S.C. § 2255(a). Federal courts have required plaintiffs to establish victimhood through proof that they are depicted in the CSAM (identity), the CSAM meets the statutory definition of sexual content,[3] and that the CSAM was found in the defendant's possession. *"Amy"*, 2021 WL 1391463, at *7. Plaintiffs

---

[3] 18 U.S.C. § 2256.

have produced sufficient evidence to establish possession and child sexual content, which the Court has reviewed *in camera*.[4] Defendant only argues Plaintiffs fail to prove identity.

Plaintiffs' evidence, as summarized above, establishes that Defendant possessed files that law enforcement POCs for each of the Plaintiffs traced to a unique series name associated with each of the ten Plaintiffs. Law enforcement contacts also identified each moving plaintiff visually as did Attorney Hepburn or Attorney Hankins. The Court nevertheless addresses identification of each of the moving Plaintiffs below:

1.    "Lily"

Detective Dale found images from the Vicky series in Defendant's possession. Dale Decl. ¶ 9. Ms. Hepburn met with Detective Dale, reviewed sanitized copies of the images in the Vicky series, and identified "Lily" as shown in them. Hepburn Decl. ¶ 8.o. Ms. Hepburn then sent copies of the images to the POC for the Vicky series, who identified "Lily" as depicted in the images and the individual linked to the Vicky series. Findley Decl. ¶¶ 4-9. Ms. Hepburn began representing "Lily" in 2008 and has seen her images many times. Hepburn Decl. ¶ 8.o. The POC met "Lily" in the course of the investigation into her abuse and stays in contact with her. Findley Decl. ¶ 4.

---

[4] Plaintiffs filed sanitized (the sexual conduct is redacted) declarations and exhibits under seal, describing how each relevant image is altered and what it depicts. Sealed Hepburn Decl. ¶¶ 7, 8, ECF No. 60; Sealed Findley Decl. ¶ 8-10, ECF No. 73; Sealed Behymer Decl. ¶¶ 6-7, ECF No. 69; Sealed Scroggins Decl. ¶¶ 7-9, ECF No. 72; Sealed Biggers Decl. ¶¶ 4-5, ECF No. 70; Sealed Roberts Decl. ¶¶ 6-7, ECF No. 66; Sealed Cornils Decl. ¶¶ 5-7, ECF No. 67; Sealed Papineau Decl. 3, Ex. 1 ECF No. 68; Sealed Bianco Decl. ¶¶ 7, 8 ECF No. 61; Sealed Smith, Jr. Decl. ¶¶ 10-11, ECF No. 64; Sealed Montagne Decl. ¶ 8, ECF No. 65; Sealed Davis. Decl. ¶ 4, ECF No. 71. Defendant's criminal case also establishes these elements. Savage Decl. Ex 3, at 3.

2.     "Angela"

Detective Dale also found images from the Angela series in Defendant's possession. Dale Decl. ¶ 9. Ms. Hepburn received sanitized copies of the files from Detective Dale and provided copies to Attorney Hankins. Hepburn Decl. ¶ 8.a. Attorney Hankins then provided a sanitized copy to the POC for the Angela series. Hankins Decl. ¶ 6. Attorney Hankins has reviewed other images of "Angela" though her representation of "Angela" since 2022. Hankins Decl. ¶ 3. The POC met "Angela" at the time of her rescue from her abuse and recognized the image found in Defendant's possession to be part of the collection from the original criminal trial of "Angela's" abuser. Smith, Jr. Decl. ¶¶ 7, 12. The POC reviewed the copy and identified "Angela" as the individual shown in the copy and associated with the Angela series. Smith, Jr. Decl. ¶¶ 10-12.

3.     "April"

Detective Dale found images from the Aprilblonde series in Defendant's possession. Dale Decl. ¶ 9. Detective Dale provided sanitized copies of the images to Ms. Hepburn who then provided copies to Attorney Hankins. Dale Decl. ¶ 11; Hepburn Decl. ¶ 8.b. Attorney Hankins sent an image to the POC for the Aprilblonde series. Hankins Decl. ¶ 7. Attorney Hankins also recognized "April" as shown in the images because of her prior representation of her in similar matters. Hankins Decl. ¶ 3. The POC reviewed the images and identified "April" as the individual shown in the image and associated with the Aprilblonde series. Montagne Decl. ¶¶ 7-9. The POC personally met "April" when she was rescued from her abuse and has identified "April" in hundreds of criminal cases. Montagne Decl. ¶¶ 4-5.

4.     "Violet"

Detective Dale found images from the At School series in Defendant's possession. Dale Decl. ¶ 9. Detective Dale provided sanitized copies of the images to Ms. Hepburn who recognized "Violet" as shown in them and provided a copied image to the POC for the At School

series. Hepburn Decl. ¶ 8.c. Ms. Hepburn has met "Violet" and represented her when she was a child. Hepburn Decl. ¶ 8.c. Ms. Hepburn has viewed the image provided by Detective Dale many times. Hepburn Decl. ¶ 8.c. The POC is regularly called upon to identify "Violet" in criminal prosecutions and has seen the image provided by Ms. Hepburn many times. Roberts Decl. ¶¶ 5, 6. The POC identified "Violet" as the individual shown in the image and linked to the At School series. Roberts Decl. ¶¶ 4, 6.

### 5.    "Maria"

Detective Dale found images from the Best Necklace series in Defendant's possession. Dale Decl. ¶ 9. Ms. Hepburn viewed the images, identified "Maria" as the individual shown in them, and provided a copy of an image to the POC for the Best Necklace series. Hepburn Decl. ¶ 8.d. Ms. Hepburn has represented "Maria" since she was a child. Hepburn Decl. ¶ 8.d. The POC has personally met with "Maria" and her mother on multiple occasions. Cornils Decl. ¶ 2. The POC identified "Maria" as the individual shown in the image and depicted in the Best Necklace series. Cornils Decl. ¶¶ 2, 5.

### 6.    "Henley"

Detective Dale found images from the BluePillow1 series in Defendant's possession. Dale Decl. ¶ 9. Ms. Hepburn reviewed the images, identified "Henley" in the images, and provided a copy of an image to Attorney Bianco. Hepburn Decl. ¶ 8.e. Ms. Hepburn has represented "Henley" since she was a late adolescent. Hepburn Decl. ¶ 8.e. Ms. Bianco identified "Henley" as depicted in the image and provided a copy to the POC for the BluePillow1 Series. Bianco Decl. Supp. Pls.' Mot. Partial Summ. J. ("Bianco Decl.") ¶ 7, ECF No. 49-2. Ms. Bianco has represented "Henley" since she was a late adolescent and recognized "her face, the background, and the poses" from CSAM of "Henley." Bianco Decl. ¶ 7. The POC has met "Henley" and her mother and has known them for many years. Papineau Decl. 3. The POC

Page 12 — OPINION AND ORDER

verified that "Henley" is shown in the image and that "Henley" is associated with the BluePillow1 series. Papineau Decl. 3.

       7.     <u>"Sarah"</u>

Detective Dale found images from the Marineland1 series in Defendant's possession. Dale Decl. ¶ 9. Ms. Hepburn reviewed an image from the series, identified "Sarah" as shown in it, and provided a copy to the POC for the Marineland1 series. Hepburn Decl. ¶ 8.h. Ms. Hepburn has represented "Sarah" for more than ten years and viewed the image found in Defendant's possession on many occasions. Hepburn Decl. ¶ 8.h. The POC met "Sarah" in the course of her investigation involving the Marineland1 series and has seen the image of "Sarah" found in Defendant's possession many times in her law enforcement duties. Behymer Decl. ¶¶ 2, 4, 6. The POC identified "Sarah" as shown in the image and her images as designated by the Marineland1 series. Behymer Decl. ¶¶ 4-6.

       8.     <u>"Cara"</u>

Detective Dale found images from the MotorCouch1 series in Defendant's possession. Dale Decl. ¶ 9. Ms. Hepburn viewed one of these images, identified "Cara" in it, and provided a copy to the POC for the MotorCouch1 series. Hepburn Decl. ¶ 8.j. Ms. Hepburn has seen the image in Defendant's possession on several occasions through her representation of "Cara." Hepburn Decl. ¶ 8.j. Ms. Hepburn has personally met "Cara" and communicated with her on multiple occasions. Hepburn Decl. ¶ 8.j. The POC has seen the image found in Defendant's possession many times in their law enforcement duties and has identified "Cara" in many criminal prosecutions. Biggers Decl. ¶¶ 3-4. The POC identified "Cara" as the victim associated with the MotorCouch1 series and shown in the image. Biggers Decl. ¶¶ 3, 4.

9.    "Pia"

Detective Dale found images from the Sweet White Sugar series in Defendant's possession. Dale Decl. ¶ 9. Detective Dale showed an image to Ms. Hepburn who recognized "Pia" in the image and provided a copy to Attorney Bianco to give to the POC for the Sweet White Sugar series. Hepburn Decl. ¶ 8.l. Ms. Hepburn has represented "Pia" since 2016. Hepburn Decl. ¶ 8.l. Ms. Bianco recognized "Pia" as the individual shown in the image and identified "Pia" as identified with the Sweet White Sugar series. Bianco Decl. 3 n.1, ¶ 8. She has represented "Pia" since she was a child and has seen CSAM of "Pia" many times while representing her. Bianco Decl. ¶ 8. Ms. Bianco provided a copy to the POC for the Sweet White Sugar series. Bianco Decl. ¶ 8. The POC has seen the image found in Defendant's possession many times in her work as a law enforcement agent. Davis Decl. 4. The POC confirmed that images in the Sweet White Sugar series show "Pia" and that "Pia" is shown in the image Ms. Bianco provided. Davis Decl. 3-4.

10.    "Sloane"

Detective Dale found files from the TARA series in Defendant's possession. Dale Decl. ¶ 9. Ms. Hepburn reviewed redacted images from the files and identified "Sloane" in the images. Hepburn Decl. ¶ 8.m. Ms. Hepburn has met "Sloane" and her mother and communicated with both of them. Hepburn Decl. ¶ 8.m. She provided copied images to the POC for the TARA series. Hepburn Decl. ¶ 8.m. The POC has met "Sloane" personally and has kept in touch with her. Scroggins Decl. ¶ 4. The POC has viewed images of "Sloane" many times during his law enforcement duties. Scroggins Decl. ¶¶ 6-8. The POC for the TARA series stated that "Sloane" is the victim in the series and that she is depicted in the images. Scroggins Decl. ¶¶ 6-8.

**D.    Defendant's Arguments**

Defendant does not offer any evidence to contradict Plaintiffs' showing. Defendant instead argues that Plaintiffs must provide their real names to establish their identity, and Defendant's liability, under § 2255. Defendant relies entirely on non-binding authority which he argues stand for an "overwhelming majority rule" supporting his position. Def.'s Resp. Pls.' Mot. Partial Summ. J. 1. Defendant cites *Yocom*, a Tenth Circuit case that dismissed an action for lack of jurisdiction because the plaintiffs failed to gain the district court's permission to proceed under pseudonyms. *W.N.J. v. Yocom*, 257 F.3d 1171, 1172 (10th Cir. 2001). *Yocom* noted, in *dictum*, that "[i]f a court grants permission, it is *often* with the requirement" that the plaintiffs' names be disclosed to the defense and the court under seal. *Id.* (emphasis added).

By its terms, *Yocom* does not stand for the proposition that plaintiffs who have the court's permission to proceed pseudonymously *must* disclose their real names. The Court allowed Plaintiffs to proceed under pseudonyms in this case. ECF Nos. 2, 16. The Court did not require Plaintiffs to disclose their real names to Defendant. ECF No. 44. *Yocom* is therefore not instructive.

Defendant's remaining authority similarly does not stand for the rule he offers. *See Manzano*, 2023 WL 4901650, at *4, 5 (holding the victim established victimhood by a declaration with her real name in the absence of other evidence substantiating that the plaintiff was a victim in the underlying criminal case); *Casseaopeia v. Brown*, No. 22-cv-00251, 2022 WL 1606520, at *3 (D. Utah. May 20, 2022) (allowing plaintiffs to proceed anonymously but instructing them to file their real names under seal); *Burdyn v. Old Forge Borough*, 330 F.R.D. 399, 403 (M.D. Pa. 2019) (mem. op.) (stating that the court previously held that the plaintiff could not proceed under a pseudonym). Defendant, in his motion, also relied on *"Jenny" v. Reetz*, No. 23-cv-00474, 2024 WL 1080912 (N.D. Okla. Feb. 8, 2024) to argue that Plaintiffs

Page 15 — OPINION AND ORDER

must disclose their legal names. Defendant now admits that *Reetz* stands for the opposite proposition. Def.'s Reply Mem. Supp. Single Mot. Summ. J. ("Def.'s Reply") 27-28, ECF No. 76; *see Reetz*, 2024 WL 1080912, at *3 (allowing the parties to address whether the plaintiffs must disclose their real names); Protective Order at *1, ECF No. 24, *"Jenny" v. Reetz*, No. 23-cv-00474 (N.D. Okla. March 7, 2024) ("Plaintiffs are relieved from disclosing their legal identities (or any information relating thereto) in this matter and depositions of Plaintiffs are forbidden."). Recognizing the error, Defendant offers that "Defendant's lawyer and his paralegal, respectfully, do not have time to go through the entire ECF docket of every opinion on Westlaw Defendant cites." Def.'s Reply 28.

 Defendant's proffered authority does not stand for his contentions, and, in one instance, contradicts them.

### E.    Plaintiffs' Showing

The Court concludes that disclosure of a plaintiff's real name is not necessary to prove victimhood under § 2255 where other evidence suffices to show identity. *See "Amy"*, 2021 WL 1391463, at *8 (holding that some plaintiffs establish identity through declarations of their family members and law enforcement points of contact); ECF No. 44. Plaintiffs have met that burden here. Plaintiffs have produced sufficient and undisputed evidence to identify "Lily," "Sarah," "Sloane," "Cara," "Violet," "Maria," "Henley," "Pia," "Angela," and "April" as victims in Defendant's underlying case. These individuals are linked to a unique NCMEC series found in Defendant's possession. Individuals with personal knowledge of the moving Plaintiffs, including law enforcement associated with the investigation into their abuse and those with longstanding relationships with the moving Plaintiffs, have identified them as shown in images found in Defendant's possession.

Plaintiffs have shown that that they are victims in accordance with § 2255. Section 2255 does not require a plaintiff who has elected to pursue liquidated damages against a CSAM possessor to show actual damages. 18 U.S.C. § 2255; *see also Doe v. Boland*, 698 F.3d 877, 882-83 (6th Cir. 2012) (interpreting § 2255); *Paroline v. United States*, 572 U.S. 434, 456-57 (2014) (holding a CSAM possessor causes harm to the victims depicted in the CSAM). The moving Plaintiffs are entitled to summary judgment, and Defendant is liable to each of them for liquidated damages in the amount of $150,000 and attorneys fees and costs.

## II.    Defendant's Motion for Summary Judgment

Defendant moves for summary judgment, raising arguments already denied by this Court. Defendant argues that (1) Plaintiffs cannot show victimhood without disclosing their real names, (2) Plaintiffs did not properly commence their action, and (3) § 2255 violates Defendant's due process rights. Defendant's argument that Plaintiffs must disclose their names to establish victimhood restates his opposition to Plaintiffs' motion. It is addressed above and by this Court's prior orders. ECF No. 44. The Court declines to address it again.

The Court also declines to address Defendant's arguments that § 2255 is unconstitutional[5] because the Court struck Defendant's affirmative defenses raising his constitutional defenses as vague and non-compliant with the required notice to the Attorney General. Op. & Order 4-7, ECF No. 35. Defendant argues a new constitutional theory, not asserted in his answer, that § 2255 is void for vagueness. This defense is not properly asserted or noticed to the Attorney General.[6] Regardless, § 2255 requires the defendant violate enumerated

---

[5] Defendant admits his arguments are improperly raised under the Fourteenth Amendment instead of the Fifth Amendment. Def.'s Reply Mem. Supp. Single Mot. Summ. J. 34, ECF No. 76.

[6] Defendant's August 14, 2025, Notice, ECF No. 55, was not "promptly" filed or served on the Attorney General as required by Fed. R. Civ. P. 5.1(a)(1)-(2).

Page 17 — OPINION AND ORDER

statutes. Defendant concedes that the criminal statutory violations enumerated in § 2255 are not void for vagueness. Def.'s Single Mot. Summ. J. 29. Section 2255 is not unconstitutionally vague because it gives "fair notice" of the proscribed conduct and who may be sued. *See Johnson v. United States*, 576 U.S. 591, 595 (2015).

Defendant's remaining argument is that Plaintiffs' claim was improperly commenced because they never provided their real names to the Defendant. Defendant's reliance on *Yocom* remains misplaced. The Court has already allowed Plaintiffs to proceed pseudonymously without disclosing their names to Defendant over Defendant's objections. ECF No. 2 (allowing Plaintiffs to proceed pseudonymously); ECF No. 34 (denying reconsideration of the same); ECF No. 44 (sustaining objection to Defendant's request that Plaintiffs disclose their real names).

Defendant's Motion for Summary Judgment (ECF No. 57) is denied.

### III.    Plaintiffs' Motion to Strike Defendant's Declaration

After the parties fully briefed the motions for summary judgment, Defendant filed a declaration stating that the real names of the individuals in Defendant's underlying criminal case were unknown by both parties and the presiding judge. Kaempf Decl. ¶ 2, ECF No. 80. Plaintiff moves under Rule 12(f), which allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[O]nly pleadings are subject to motions to strike." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). A standalone declaration is generally not a pleading. Fed. R. Civ. P. 7(a). Defendant's declaration is not a pleading and is generally related to his arguments that Plaintiffs must disclose their real names. Plaintiffs' motion to strike is accordingly denied.

Defendant's Response to the motion to strike, however, states that his declaration relates to "this lawsuit (A) being a sham that (B) lacks personal jurisdiction, and is (C) designed merely to allow Plaintiffs' multiple lawyers to recover statutory attorney fees." Def.'s Resp. Pls.' Mot.

Strike Decl. Def. Counsel 2, ECF No. 82. Defendant has not raised the defense of personal jurisdiction and has consented to this Court's personal jurisdiction over him as evidenced by his appearance and several filings. *See* Fed. R. Civ. P. 12(h)(1)(B) (stating a party waives a personal jurisdiction defense by failing to assert it in its first responsive pleading); Answer. Defendant offers no evidence from which this Court would conclude that this is a "sham" lawsuit "designed merely to allow Plaintiffs' multiple lawyers to recover statutory attorney fees." Defendant relies merely on baseless speculation that Plaintiffs' lawyers represent parties who do not exist because Plaintiffs have not disclosed their real names to Defendant.

## CONCLUSION

For the reasons discussed above, Plaintiffs' Request for Judicial Notice (ECF No. 48) is GRANTED IN PART; Plaintiffs' Motion for Partial Summary Judgement (ECF No. 49) is GRANTED; Defendant's Single Motion for Summary Judgment (ECF No. 57) is DENIED; Plaintiffs' Motion to Strike (ECF No. 81) is DENIED. Defendant is liable to the moving Plaintiffs in the amount of $150,000 each plus costs and fees under 18 U.S.C. § 2255(a).

DATED this <u>17th</u> day of March 2026.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (he/him)
United States District Judge